IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESUS ONEKA HALL,

   Plaintiff,

v.

DR. DESHA BEDFORD,
EMMANUEL NZEADIGHIBE,
PEGGY SLOCUMB, LPN, and
FEYISARA JOB, RN, [1]

   Defendants.

Civil Action No.:  PX-23-2623

## MEMORANDUM OPINION

Pending in this civil rights action is the Motion for Summary Judgment filed by Defendants Dr. Desha Bedford and Nurse Peggy Slocumb.  ECF Nos. 13.[2]  Hall has also filed an amended complaint without first seeking leave to amend and moves to incorporate the exhibits from the Complaint into the amended complaint.  *See* ECF Nos. 36 & 37.  The Court has reviewed the pleadings and finds no hearing necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons discussed below, the Court grants summary judgment in Nurse Slocumb and Dr. Bedford's favor, dismisses the action as to the remaining defendants, strikes the amended complaint, and denies the motion to incorporate exhibits as moot.

---

[1] Despite significant efforts, Nurse Feyisara Job was never properly served. See ECF Nos. 6, 7, 17, 18, 26, 30, 31, 32, 33, 38.  The United States Marshal filed a return indicating that service was effected on the resident agent for Bethel Health Services, LLC, Job's employer.  *See* ECF Nos. 18, 32.  But nothing suggests that the resident agent was authorized to accept service for Job.  Thus, the Complaint against Job will be dismissed without prejudice for lack of service, and Hall's Motion for Default Judgment as to Job (ECF No. 39) will be denied.

[2] Assistant Warden Nzeadighibe separately moves to dismiss the Complaint against him.  ECF No. 19.  Hall also asks to dismiss Assistant Warden Nzeadighibe from the case.  ECF No. 22.  Accordingly, the Court grants Hall's request to dismiss the claims against the Assistant Warden without prejudice, and warns Hall that if he refiles this action against Assistant Warden Nzeadighibe, Hall may be required to pay for costs associated with filing the previous action.  *See* Fed. R. Civ. P. 41(d)(1).  Assistant Warden Nzeadighibe's motion to dismiss (ECF No. 19) is denied as moot.

I.    **Background**

This case arises from the medical treatment Hall received while he was a pretrial detainee at the Chesapeake Detention Facility ("CDF"). ECF No. 1. The Complaint avers that because Defendants did not timely treat a cut on Hall's elbow, Hall ultimately developed MRSA, or methicillin-resistant staphylococcus aureus infection.[3] According to Hall's medical records, Hall submitted a sick call request[4] on March 6, 2023, for injuries he sustained during an accident. He described in the sick call request that he was suffering from suspected nerve damage in his shoulder, face, head, and forearm and a shoulder fracture. ECF No. 13-5 at 25. But Hall did not ask for treatment regarding a cut on his elbow. *Id*. On March 15, 2023, Dr. Ngozi Ezike-Ejiogu evaluated Hall. During that visit, Hall did not complain about his elbow. ECF No. 13-4 at 31-23.

Sometime between April 1 and 3, 2023, Hall suspected that a cut on his elbow showed signs of infection. ECF No. 22-13 at 1. Although Hall attests that he submitted a sick call request for his elbow, no contemporaneous records reflect any such request or related care. ECF No. 13-2, ¶¶ 5-6. Nonetheless, Hall says at some point, he showed Nurse Slocumb his arm and described his symptoms, but according to Hall, she never secured him medical attention, even though she had recognized how "bad" his arm looked. ECF No. 22-13 at 1. Evidently, Hall had reported to his mother and fiancée that he was having difficulty receiving medical care, and that medical personnel, including "Nurse Peggy," promised Hall he would receive treatment. ECF No. 22-1 at 3 (Swann Aff.); ECF No. 22-1 at 4 (M. Hall Aff.). Another prisoner named Proctor also attests

---

[3] *See* https://www.cdc.gov/mrsa/about/index.html (last visited, February 7, 2025).
[4] CDF's inmate handbook explains the sick call process of placing sick call slips sick call box which a nurse collects nightly. ECF No. 13-2, ¶ 2. Nursing staff triage the sick call slips the next day, and inmates are usually seen within 24 hours of their submitting a sick call slip. *Id*. In practice, inmates also hand the slips directly to officers but that risks that the slips may be lost or misplaced. *Id*.

that on some unspecified dates, Hall submitted sick call slips, showed Nurse Peggy his arm, and that the nurse promised to take Hall to medical but did not. ECF No. 22-12 (Proctor Aff).

On April 8, 2023, Hall told Nurse Slocumb that his elbow hurt and was swollen. Nurse Slocumb, who primarily distributes medication to the prisoners, responded that she would attempt to have him seen by a provider. ECF No. 13-6, ¶ 5. That day, Nurse Slocumb asked Nurse Job to examine Hall, which Nurse Job did in the medical unit. ECF No. 13-6, ¶ 5; ECF No. 13-4 at 27-29. Upon examination, Nurse Job documented that Hall was complaining of left elbow pain, and that the wound site had mild alteration in skin integrity, but the skin was not warm to the touch, nor was there drainage, and Hall did not have a fever. *Id.* Nurse Job cleaned the affected area and applied a topical antibiotic. *Id.* at 29; ECF No. 14-2, ¶ 8.

Evidently still feeling pain in his elbow, Hall next decided to pretend he was having chest pains so that correctional staff would take him to the medical unit. ECF No. 22-13 at 2. His ruse secured Hall a medical visit, but according to Hall, Nurse Job simply provided him a band aid for his elbow and sent him back to his cell. ECF No. 1 at 6; ECF No. 22-13 at 2.[5] A few days later, on advice of his mother, Hall pretended again to have some other ailment and laid on the floor of his cell. This time he was taken to see Dr. Bedford. ECF No. 1 at 5; ECF No. 22-13 at 5-6.

On April 11, 2023, Dr. Bedford evaluated Hall for complaints of left arm pain and swelling. ECF No. 13-2, ¶ 9; ECF No. 13-4 at 23-25. Hall also had a decreased range of motion in his arm, as well as chills, fever, and decreased appetite. His temperature was 100.2 and his elbow was warm and swollen. *Id.* Dr. Bedford diagnosed Hall with cellulitis and requested immediate evaluation with Emergency Medicine and Orthopedics. ECF No. 13-2, ¶ 9; ECF No. 13-4 at 21.

---

[5] No contemporaneous medical records document this visit.

3

Hall was admitted to the University of Maryland Medical Center ("UMMC") on the same day, where he stayed until April 25, 2023.

The hospital further diagnosed Hall with left arm cellulitis and septic olecranon bursitis. ECF No. 13-5 at 16-24; ECF No. 13-2, ¶ 11.  He received intravenous antibiotics and surgical draining of an abscess.  Although the culture from the abscess site had been negative for MRSA, his nasal swab however revealed otherwise, and so he was given MRSA specific antibiotics.  A few days later, Hall was transitioned to oral antibiotics.  The surgical dressings were removed on April 21, and on April 25, and the hospital discharged Hall to the Metropolitan Transition Center infirmary.  ECF No. 13-5 at 1-11; ECF No. 13-4 at 18; ECF No. 13-2, ¶ 12.  Hall returned to CDF on May 12, 2023.  ECF No. 13-4 at 4-11; ECF No. 13-2, ¶ 12.

Thereafter Dr. Bedford evaluated Hall on May 31, 2023, for his asthma and complaints of pain in his right leg, right shoulder, and left elbow.  ECF No. 13-2, ¶ 14; ECF No. 13-3 at 29-33.  Dr. Bedford prescribed acetaminophen and Lyrica for additional pain management. *Id*.  Dr. Bedford next saw Hall on August 16, 2023.  ECF No. 13-2, ¶ 15; ECF No. 13-3 at 23-26.  Hall complained of left elbow swelling but had no other signs of infection.  Nonetheless, Dr. Bedford ordered an elbow x-ray to rule out an infection.  ECF No. 13-2, ¶ 15; ECF No. 13-3 at 27.  X-rays were taken the next day showed tissue swelling but were otherwise unremarkable.  *Id*. ¶ 16; ECF No. 13-5 at 26.

On August 23, 2023, Dr. Bedford saw Hall again regarding his left elbow.  ECF No. 13-2, ¶ 17; ECF No. 13-3 at 20-22.  Hall complained of pain and swelling, but Dr. Bedford saw no signs of swelling and described the wound as healed.  ECF No. 13-3 at 20-22.  Hall also had full range of motion and his elbow was not tender to the touch.  Dr. Bedford conveyed the x-ray results to Hall and told him he needed no further care for his elbow.

4

## II. Standard of Review

Dr. Bedford and Nurse Slocumb move for summary judgment to be granted in their favor under Rule 56(a). This Rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must 'set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal citation and quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 249-50.

## III. Analysis

Hall principally faults Dr. Bedford and Nurse Slocumb for denying him constitutionally adequate medical care, in violation of the Eighth Amendment of the United States Constitution as made applicable to pretrial detainees through the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001)(citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998); (*Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding any "deliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment") (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To survive summary judgment on this claim, Hall must adduce some evidence that he suffered from a serious medical need; that the defendant medical provider knew about that need; and that the defendant failed to treat that need with deliberate indifference.  *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). To satisfy the deliberate indifference standard in the pretrial detention context, a plaintiff must demonstrate that the defendant's actions were "'objectively unreasonable;' that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly."  *Id.*  It is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee."  *Id.* at 611–12.

Clearly, Hall's infection constitutes an objectively serious medical need.  But no record evidence supports that either Dr. Bedford or Nurse Slocumb's responses were objectively unreasonable in light of known circumstances.  Nurse Slocumb principally interacted with Hall to dispense medicine.  And yet, when Hall complained about his elbow on April 8, 2023, Nurse Slocumb immediately contacted Nurse Job to examine Hall's elbow.  Nurse Job evaluated Hall that same day and found no sign of infection.  Thus, no rational juror could conclude that Nurse Slocumb acted with deliberate indifference to Hall's serious medical needs.

Similarly, no evidence supports that Dr. Bedford even knew of Hall's elbow injury until April 11, 2023, when Hall appeared in the medical unit for an unscheduled visit.  Dr. Bedford saw Hall immediately, diagnosed him with cellulitis, and arranged his transfer to a hospital.  No rational juror could conclude that once Dr. Bedford learned of Hall's condition, the doctor's response had been objectively unreasonable given the known circumstances.

In response, Hall presses that during this medical visit, Dr. Bedford admitted that he had seen Nurse Job's medical note from the April 8, 2023, visit, but he could not see Hall that day. Even if Dr. Bedford admitted as much, this alone does not render Dr. Bedford deliberately indifferent to Hall's serious medical needs. Hall's evolving condition had not yet presented as serious on April 8. On that day, Hall had a cut on his elbow which required cleaning, but he had no fever, swelling or other symptoms consistent with infection. Accordingly, even if Dr. Bedford ignored Hall on April 8, Hall's cut appeared minor. No reasonable juror could conclude from this that Dr. Bedford's failure to see Hall on April 8 was objectively unreasonable.

In sum, when viewing the record most favorably to Hall, no rational juror could conclude that Dr. Bedford or Nurse Slocumb rendered constitutionally inadequate medical care. During Nurse Slocumb's brief interaction with Hall, she immediately referred Hall to Nurse Job for follow up care which Hall received. Likewise, Dr. Bedford wasted no time in securing Hall proper care for his infection once it came to light. On this record, summary judgment must be granted in their favor.

**IV.    The Amended Complaint and Motion to Adopt**

Hall filed an amended complaint but did not separately seek leave to amend. ECF No. 36. Hall did move for this Court to "adopt" the exhibits attached to his Complaint as part of the amended complaint. ECF No. 37. The amended complaint is substantively like the original Complaint, except that it adds YesCare Corp. and the Warden as defendants. Regarding "YesCare Corp.," the amended complaint merely alleges that the corporation "is responsible for the medical indifference of its employees." ECF No. 36 at 4-5. As to the Warden, he is said to be "liable because his policy allows inmates to have to suffer unconstitutionally for long periods of time

before receiving adequate treatment." *Id*. at 5. Because the amended complaint fails to state a claim as to either YesCare or the Warden, the Court will strike the pleading.

Federal Rule of Civil Procedure 15 directs that the Court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). But where the proposed amended claim fails as a matter of law, the Court may deny an amendment as futile. *See Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008). Because the amended complaint fails to state a claim, this Court would deny any request to amend as futile. Thus, the amended complaint must be stricken.

Section 1983 extends liability only to *persons* whose acts or omissions violate the plaintiff's constitutional or statutory rights. 42 U.S.C. § 1983 ("[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights[.]"). Supervisors such as the Warden cannot be held accountable under § 1983 for the constitutional violations of their subordinates solely under a principal-agent liability theory. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability for constitutional violations "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, a supervisor may be held liable for constitutional violations of a subordinate where the evidence shows that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional

8

injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury that the plaintiff had suffered.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Alternatively, liability may attach when constitutional deprivation resulted from the official or entity having implemented an unconstitutional policy, custom or practice.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978); *See also Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

When viewing the amended complaint facts most favorably to Hall, he has failed to make plausible the new claims.  The Warden played no direct role in Hall's care.  Nor has the amended complaint articulated in any detail the Warden's supposed "policy" that led to any alleged denial of care.  Similarly, as to YesCare, the amended pleading says nothing about how the corporation caused or contributed to Hall's injury apart from the alleged omissions of its employees.  Because Hall fails to articulate a legally cognizable claim against either the Warden or YesCare, the amended complaint is futile and will be stricken.  Hall's motion to adopt exhibits is denied as moot.

## V.     Conclusion

The Court dismisses the action as to Warden Nzeadighibe and Nurse Job, and grants summary judgment in favor of Nurse Peggy Slocumb and Dr. Asha Bedford.  Hall's amended complaint is stricken, and his motions are denied as moot.  A separate Order follows.

| | |
|---|---|
| 2/11/25 | /S/ |
| Date | Paula Xinis<br>United States District Judge |